HALL, Judge.
Appellant, Ruth Woodard Mitchell, appeals from adverse judgments in two consolidated cases (1) rejecting her demands in a suit to cancel a lease and option to purchase granted by her to appellee, Denny L. Bertolla, and (2) ordering her to specifically perform the option to purchase in a suit by Bertolla seeking that relief. We affirm the judgments of the district court.
On May 13, 1971, Mrs. Mitchell granted a lease and option to purchase to Bertolla, affecting two tracts of land in Bienville Parish, one containing 160 acres and one containing 381 acres. The lease was for a three-year term and provided for a monthly rental of $75 due on the 15th of each month. Bertolla was granted the option to purchase at any time during the term of the lease the entire property for $80,000, or the 160 acre tract for $25,000 and the 381 acre tract for $55,000.
On January 21, 1972, Mrs. Mitchell filed suit against Bertolla to cancel the lease for non-payment of the monthly rental due December 15, 1971 and January 15, 1972. Bertolla answered, alleging payment of the rental in accordance with the agreement.
Bertolla filed a separate suit against Mrs. Mitchell alleging he exercised the option to purchase the 160 acre tract by letter of January 18, 1973, and praying for specific performance. By supplemental petition, Bertolla exercised the option to purchase the 381 acre tract. Mrs. Mitchell answered, alleging the option expired before being exercised by reason of non-payment of rental and, alternatively, that the option was invalid because of lesion beyond moiety.
At trial, the issues narrowed down into two specific factual questions: (1) did Bertolla make the rental payments due December 15, 1971 and January 15, 1972, and (2) was the price stipulated in the option less than one-half the actual value of the land on the date the option was granted? The district court, in well-considered written reasons for judgment, reviewed and analyzed the evidence and resolved both issues in favor of Bertolla.
On the question of whether the rental payments were made, we adopt the findings of the district court:
“Due to the evidence which was adduced on the trial of this mattter the Court feels constrained to conclude that the lessee, Mr. Bertolla, made the rental payments which were due on December 15, 1971, and January 15, 1972, and that they were received or should have been received by the lessor, Ruth W. Mitchell. In the opinion of the Court it would be manifestly unfair and create an injustice to Mr. Bertolla to conclude otherwise. Mr. Bertolla gave testimony to the effect that prior to the due date of the December 15, 1971, rental, he had verbally notified Ruth W. Mitchell that he exercised or would exercise the option on the 160 acre tract and that he had been informed by her that the agreement was invalid and that she would not perform thereunder. He stated that after seeking legal *211 advice, he was advised that it would be to his best interest to make future rental payments through a third party and that pursuant thereto he instructed his bank, Minden Bank and Trust Company, Min-den, Louisiana, to make the rental payments to Ruth W. Mitchell each month by their bank money order by withdrawing money from his checking account each month to do so. Mrs. Mitchell disputed the testimony given by Mr. Bertol-la to the effect that they had had any verbal conversation with respect to the option prior to the due date of the December 15, 1971, rental. In any event, Mr. Don Moore, an employee of Minden Bank and Trust Company, Minden, Louisiana, testified that pursuant to instructions received from Mr. Bertolla his bank sent bank money orders made payable to Mrs. Mitchell which were dated and mailed to Mrs. Mitchell on December 10, 1971, and January 10, 1972. He stated that the bank had also made monthly rental payments to Mrs. Mitchell or had attempted to make them for all months subsequent thereto up to and including the time of the trial. He further testified that the bank money orders dated December 10, 1971, and January 10, 1972, were not cashed or had not been tendered for payment to his bank but that they were not returned to the bank by the United States Post Office Department. However, the first two rental payments, aforesaid, were not mailed registered or certified mail but all subsequent thereto were and had been refused by Mrs. Mitchell and returned by the U.S. Postal Service at Ringgold, Louisiana. It was also his testimony that Mrs. Mitchell had previously been a customer of his bank, that his bank had communicated with her by mail on numerous occasions in the past, which had been addressed to her simply ‘Ringgold, Louisiana,’ that the letters had never been returned by the Postal Service and that they had always had response from her with regard to such communications. Under these circumstances the Court finds that the rental payments due on December 15, 1971, and January 15, 1972, were made by the lessee, Mr. Ber-tolla, or that in any event he did all that was required of him to make them for he had no notification from Mrs. Mitchell that they had not been made prior to the filing of the suit by her for cancellation of the agreement, to which fact Mrs. Mitchell herself testified. Accordingly, it is the decision of the Court that at the time the lessee-optionee, Mr. Ber-tolla, attempted to exercise the option on the 160 acre tract, the lease agreement and option to purchase was valid, in force and effect and had not terminated due to non-payment of the December 15, 1971, and January 15, 1972, rentals.”
Turning to the lesion beyond moiety issue, the price stipulated in the option was $80,000 for the entire property, or $25,000 for the 160 acre tract and $55,000 for the 381 acre tract. These prices translate into $156.25 per acre for the 160 acre tract and $144.35 per acre for the 381 acre tract. In order to void the contract on the basis of lesion beyond moiety, it was incumbent on Mrs. Mitchell to prove that on May 13, 1971, the date of the contract, the value of the 160 acre tract was at least $312.50 per acre and the value of the 381 acre tract was at least $288.70 per acre.
Mrs. Mitchell’s expert witnesses testified to the following values:
Herbert Robinson: 160 acre tract — $388 per acre 381 acre tract — $250 per acre
0. L. Jordan: 160 acre tract — $400 per acre 381 acre tract — $350 per acre
Bertolla’s expert witnesses testified to the following values:
Walter L. Hunter: 160 acre tract — $210 per acre 381 acre tract — $180 per acre
Frank W. Grigsby: 160 acre tract — $225 per acre 381 acre tract — $185 per acre
Sam Jones: 160 acre tract — $160 per acre 381 acre tract — -$150 per acre
We adopt the district court’s analysis of the evidence concerning value:
“After considering the testimony of all of the witnesses who testified on the trial of this matter, both lay and expert, it is *212 the opinion and decision of the Court that the price recited in the lease agreement and option to purchase dated May 13, 1971, is not lesionary and that the said agreement is not invalid or null and void because of lesion beyond moiety. The evidence adduced at the trial of this matter by the plaintiff in reconvention, Mrs. Mitchell, is insufficient to establish and is not demonstrative that such is the case. Contradictorially, in the opinion of the Court the evidence adduced by the defendant in reconvention, Mr. Bertolla, establishes that such is not the case.
“Mr. Herbert Robinson; one of plaintiff’s expert witnesses, testified that he was primarily a timber buyer for Martin Timber Company but that his company did buy land- also. Mr. Robinson agreed under cross-examination that the value which he placed upon the property was arrived at in an arbitrary manner by him. That is, that was just his opinion as to what it was worth without his having arrived at it by any particular method or considering what comparable property in the area had been selling for. Mr. O. L. Jordan, the other expert who testified on behalf of Mrs. Mitchell used tracts of land as comparables which were much smaller than that involved in the instant suit and had to make various adjustments to the subject .property from those comparables in order to make it have a value which would subject the agreement to a successful challenge for lesion beyond moiety. He readily admitted that larger tracts would be a better comparable, of which he had only one, and that this tract was not actually a good comparable because of the fact that it had producing gas wells on it and the purchasers acquired one-half of the minerals when they acquired the property and, additionally, the property was very heavily timbered. The testimony of Dr. Richard Oosta was to the effect that the plaintiff in reconvention, Mrs. Mitchell, had contacted him since the instant suit was filed and asked him if he would be interested in purchasing the property and he stated that ‘he would have to be offered the land at a price’ and asked that a price be given to him by counsel. His testimony was not positive as to whether he would be willing to purchase the property and if so, the price that he would be willing to pay for it. In any event, Dr. Oosta testified that he was a friend of Mrs. Mitchell and had been for a number of years. Without questioning the sincerety of Dr. Oosta, it would be difficult for him to be objective in his testimony on her behalf.
“The testimony of both the expert witnesses and the lay witness on behalf of the defendant in reconvention, Mr. Ber-tolla, appears to be predicated on criteria which support their opinion as to the value of the land and in the main appears to the Court to be a closer approximation of the value of the land at the time the.agreement was entered into.
“The testimony of the plaintiff’s expert witnesses, Mr. Walter L. Hunter and Mr. Frank W. Grigsby, as well as the brochures introduced into evidence which they prepared reflects that they used large sized tracts which were comparable to the subject property from sales that had been made in a period of time close to that of the date of the agreement and the market value of the subject property given by each of them is far from an amount sufficient to constitute lesion beyond moiety. Additionally, the testimony of the defendant in re-convention’s expert witness, Mr. M. Sam Jones, Jr., is very, very close to that provided in the option agreement and Mr. Jones had dealt with and deals with similar type property in the same area as the subject property for a number of years and was doing so at the time of the said agreement.
“The testimony of Mr. Raymond D. Wiggins, a landowner in the area, was to the effect that several years prior to the date of the agreement he had purchased a tract contiguous to the subject proper *213 ty at a less amount per acre than what was provided in the option agreement and that this purchase had been made from Mrs. Mitchell and her husband.”
Appellant’s counsel, enrolled after the appeal was perfected and the record lodged in this court, contend the factual findings of the district court are erroneous, emphasizing those points most favorable to appellant. Having carefully considered the evidence, we are convinced the findings of the district court are entirely correct. The preponderance of the evidence is that the rental payments were timely and properly made, maintaining the lease with option to purchase in full force and effect. The preponderance of the evidence is that the value of the property on the date the option was granted was substantially less than double the price stipulated in the option, negating the defense of lesion beyond moiety.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.